2022 IL App (1st) 210046

SECOND DIVISION
August 2, 2022

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-21-0046

|  |  |  |
|---|---|---|
| AMOS FINANCIAL, LLC, | ) | Appeal from the |
|  | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, |
|  | ) | Law Division. |
|  | ) |  |
| v. | ) | No. 2018 L 011035 |
|  | ) |  |
| STAN SZYDLOWSKI, | ) | Honorable |
|  | ) | Jerry A. Esrig |
| Defendants-Appellant. | ) | Judge Presiding. |
|  | ) |  |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Justices Lavin and Cobbs concurred in the judgment and opinion.

## OPINION

¶ 1     This appeal stems from a breach of guaranty contract cause of action filed by the plaintiff, Amos Financial LLC (Amos), against, *inter alia*, the defendant, Stan Szydlowski (Szydlowski). The defendant appeals from the circuit court's order granting summary judgment in favor of the plaintiff. On appeal, the defendant asserts that summary judgment was improper because the plaintiff never acquired the defendant's guaranty. In the alternative, the defendant contends that even if the plaintiff was the owner of the guaranty, there remained genuine issues of material fact as to the scope of the defendant's liability under the guaranty. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      At the outset, we note that the record before us is incomplete, as it fails to include any of the documents ostensibly issued during discovery. More importantly, the record does not contain any report of the proceedings below, nor any acceptable substitute—such as a bystanders' report or an agreed statement of facts—as authorized under Illinois Supreme Court Rule 323 (eff. Dec. 13, 2005). From the bare common law record that is before us, we have been able to glean the following pertinent facts and procedural history.

¶ 4      On October 11, 2018, the plaintiff, Amos, filed a complaint against, *inter alia*, the defendant, Szydlowski,[1] alleging a breach of guaranty. According to the complaint, the plaintiff is the holder and owner of a promissory note (note) executed on October 1, 2010, by the original borrower Klaucens and Associates, Inc. (Klaucens) and its lender First Midwest Bank (FMB). Under the note, Klaucens promised to pay FMB $200,000. The note, which is attached to the complaint, further provides that the loan was to mature on December 17, 2011.

¶ 5      The complaint further alleged that the note was assigned twice. First, on January 16, 2013, FMB negotiated and executed a document, titled "Endorsement and Allonge to Promissory Note" (the first allonge), agreeing to assign the note to M-III Chicago, L.L.C. (M-III Chicago). Then, on June 15, 2018, M-III Chicago executed a document, titled "Allonge" (the second allonge), agreeing to assign the note to the plaintiff.

¶ 6      The complaint also alleged that on May 1, 2008, together with three other individuals, the

---

[1] In addition to Szydlowski, the complaint initially named three more defendants: Elizabeth Ursin, Erika Bolger, and Joseph C. Brucek. For various reasons, however, all three were either defaulted or dismissed from the case with prejudice. Accordingly, because this appeal concerns only Szydlowski, we will set forth only those facts and procedural history relevant to the summary judgment order entered against him.

defendant executed a "continuing" commercial guaranty (guaranty) in favor of FMB as a security on Klaucens' note. According to the complaint, the plaintiff is the assignee and successor to FMB and therefore also the holder and *bona fide* owner of the guaranty.

¶ 7 The guaranty, which is attached to the complaint, states, in pertinent part, that "for good and valuable consideration," the defendant "absolutely and unconditionally guarantees full and punctual payment of [his] share of the indebtedness" owed to FMB by Klaucens and the "performance and discharge of all" of Klaucens' "obligations" under the note and the "[r]elated documents." The guaranty defines the defendant's "share of the indebtedness" as $50,000, plus interest, collection costs, expenses, and attorneys' fees. In addition, the guaranty defines "note" as:

"[T]he promissory note dated May 1, 2008, in the original principal amount of $200,000 from [Klaucens] to [FMB], together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note in the agreement."

¶ 8 The guaranty also contains a subsection in bold capital letters entitled "Continuing Guaranty," which provides in full:

"THIS IS A 'CONTINUING GUARANTY' UNDER WHICH GURANATOR AGREES TO GUARANTEE THE FULL AND PUNCUTAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE GURANATOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE IDEBTEDNESS WILL NOT DISCHARGE OR DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THE GUARANTY FOR

ANY REMAINING AND SUCCEEDING INDEBTEDNESS EVEN WHEN ALL OR PART OF THE OUTSTANDING INDEBTEDNESS MAY BE A ZERO BALANCE FROM TIME TO TIME."

¶ 9    In addition, under the subsection "Duration of Guaranty," the guaranty provides that the guaranty will "continue in full force until all the [i]ndebtedness incurred or contracted before receipt by [FMB] of any notice of revocation shall have been fully and finally paid and satisfied and all of [the defendant's] other obligations under this [g]uaranty shall have been fully performed."

¶ 10    Moreover, the guaranty states that the defendant authorizes FMB "without notice or demand, and without lessening [the defendant's] liability under the [g]uaranty, from time to time *** to make one or more additional secured or unsecured loans to [Klaucens]" and to "assign or transfer" the guaranty "in whole or in part." In addition, the guaranty provides that "on transfer of [the defendant's] interest," the guaranty "shall be binding upon and inure to the benefit of the parties, their successors, and assigns."

¶ 11    According to the plaintiff's complaint, because Klaucens defaulted on the October 1, 2010, note, the defendant owed the plaintiff money under the guaranty. The complaint therefore sought a judgment against the defendant in the sum of $50,000, plus accruing interest, attorneys' fees, costs, and any other amounts due under the note.

¶ 12    On June 7, 2019, the defendant filed his answer to the complaint, admitting that on October 1, 2010, Klaucens and FMB executed a promissory note for the amount of $200,000 and that on May 1, 2008, he signed the guaranty in the amount of $50,000 for a certain promissory note executed on May 1, 2008, by Klaucens and payable to FMB. The defendant, however, stated that he had insufficient knowledge as to whether (1) the October 1, 2010, note was in default, (2) the

plaintiff had performed all of its obligations under that note and the guaranty, (3) the guaranty was in default, (4) the guaranty required him to pay the plaintiff's fees and costs to enforce the guaranty, and (5) the exact amounts that were due and owing to the plaintiff under the guaranty. In addition, the defendant neither admitted nor denied the plaintiff's allegation that the guaranty was a "continuing" guaranty, but rather asserted that the "document spoke for itself."

¶ 13    On June 19, 2019, the circuit court entered a case management order requiring that written discovery be issued by July 3, 2019. While the record reveals that in response to this order, on July 3, 2019, the defendant served written discovery requests on the plaintiff, those requests are not part of the record on appeal.

¶ 14    On August 27, 2019, the plaintiff filed the instant motion for summary judgment, asserting that it was entitled to judgment as a matter of law because the defendant failed to deny or adequately refute the material allegations in the complaint. Specifically, the plaintiff asserted that it was undisputed that it was the holder and *bona fide* owner of both the note and the guaranty. In addition, the plaintiff pointed out that the defendant failed to refute that the note was in default and that by his failure to pay the amounts due and owing under the note, he was in default on the guaranty.

¶ 15    In support of its motion for summary judgment, the plaintiff attached, *inter alia*, an affidavit from its Chief Financial Officer (CFO) and general counsel Brian Donegan, who attested to having personal knowledge of the plaintiff's policies and procedures with respect to "loan payment processing, disbursements, and the keeping, integration, and maintenance of loan records, including transaction histories."

¶ 16    According to Donegan's affidavit, the relevant loan and note were executed by Klaucens and FMB on October 1, 2010. That note was then negotiated by FMB to M-III Chicago by way of

the first allonge and then by M-III Chicago to the plaintiff by way of the second allonge. Donegan further attested that the note was secured by the defendant's May 1, 2008, guaranty, which was originally held by FMB. Donegan opined that when the plaintiff acquired the loan and the note from M-III Chicago, on June 15, 2018, the guaranty was automatically transferred it.

¶ 17    According to Donegan's affidavit, upon acquiring the loan, the plaintiff also acquired the business records maintained by FMB and its successor M-III Chicago, including the loan's transaction history. That transaction history, which was attached to Donegan's affidavit, establishes that no payments were made on the loan since it was acquired by the plaintiff. According to Donegan, as of April 3, 2019, Klaucens owed the plaintiff $139,535.41 on the note and the defendant owed it $62,579.22 under the guaranty.

¶ 18    On October 29, 2019, the defendant filed a response arguing that the plaintiff did not acquire the guaranty pursuant to the two allonges and that even if it did, there remained genuine issues of material fact as to what he had guaranteed that precluded summary judgment. Specifically, the defendant pointed out that neither the October 1, 2010, note, nor either of the allonges, refer to his previously executed May 1, 2008, guaranty. Rather, the plain language of that guaranty makes clear that the "note" that he guaranteed was the May 1, 2008, promissory note, and not the October 1, 2010, note, upon which the plaintiff's complaint relies.

¶ 19    On October 30, 2019, the plaintiff filed its reply asserting, *inter alia*, that it was expressly assigned the May 1, 2008, guaranty. In support, the plaintiff attached two documents: (1) a January 16, 2013, "General Assignment" between FMB and M-III Chicago and (2) an August 2, 2019, "Omnibus Assignment of Loan Documents" between M-III Chicago and itself with an effective date of June 15, 2018.

¶ 20    After the motion for summary judgment was fully briefed, the matter was set for a clerk's

status hearing on November 19, 2019. Because the record before us does not contain a transcript of any of the proceedings below, we do not know exactly what transpired at that hearing or why the circuit court chose to forego a hearing on the summary judgment motion. From the bare common law record before us, we can only discern that on November 19, 2019, the motion was taken under advisement.

¶ 21 On January 30, 2020, the circuit court entered an eight-page written order granting summary judgment in favor of the plaintiff in the amount of $64,665.92. The court found that by signing the May 1, 2008, guaranty, the defendant had guaranteed the October 1, 2010, note. In doing so, the court first rejected the plaintiff's position that it had been expressly assigned the guaranty. In this respect, the court noted that it could not rely on Donegan's statement that the guaranty was transferred to the plaintiff on June 15, 2018, because his affidavit did not attach the "General Assignment" or the "Omnibus Assignment of Loan Documents," and neither document attached to the plaintiff's reply brief had been authenticated.

¶ 22 Nonetheless, the circuit court found that the defendant was bound by the May 1, 2008, guaranty because the plain language of that contract reflected that it was a "continuing" guaranty, pursuant to which the defendant had agreed to guarantee all future obligations of Klaucens, arising from the originally guaranteed loan. The court found that the October 1, 2010, loan was such a future obligation and that therefore the defendant was liable for it.

¶ 23 On March 3, 2020, the defendant filed a motion to reconsider and vacate the grant of summary judgment in favor of the plaintiff, asserting that the circuit court had erred in finding that the guaranty was a "continuing" guaranty. The defendant argued that the conflict between the "continuing guaranty" language and the language limiting his obligation to the "note" dated May 1, 2008, had to be read in favor of him as the guarantor. In addition, the defendant argued that it

was error for the circuit court to rely on section 13 of the Restatement (Third) of Suretyship and Guaranty (1996) (Restatement (Third) of Suretyship and Guaranty § 13 (1996)) to conclude that it did not matter that the plaintiff was not expressly assigned the guaranty. The defendant argued that, contrary to the court's position, the guaranty could be assigned only if the alonges on the promissory note were accompanied by express assignments of the loan itself.

¶ 24    After the plaintiff filed its response on October 16, 2020, the circuit court heard arguments via Zoom on December 18, 2020. The circuit court denied the defendant's motion to reconsider for the reasons stated in open court. Because the appellate record is devoid of any transcript of the proceedings below, we have no way of discerning what transpired at that hearing, whether additional evidence was presented to the circuit court, and what the court's reasoning may have been.

¶ 25    The defendant now appeals both the order granting summary judgment in the plaintiff's favor and the order denying his motion for reconsideration.

¶ 26                                    II. ANALYSIS

¶ 27    Before addressing the merits of the defendant's appeal, we note that it is the burden of the defendant, as the appellant, to provide a sufficiently complete record of the proceedings in the trial court to allow for meaningful appellate review. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984); *Lewandowski v. Jelenski*, 401 Ill. App. 3d 893, 902 (2010). It is axiomatic that in the absence of a complete record, a reviewing court will resolve all insufficiencies apparent therein against the appellant and will presume that the order entered by the circuit court was in conformity with the law and had a sufficient legal and factual basis. *Foutch*, 99 Ill. 2d at 392. Because the record here is incomplete, as it contains no transcript from the proceedings below—including, glaringly, the hearing on the defendant's motion to reconsider the grant of summary judgment in favor of the

plaintiff—in reviewing the merits of the defendant's claims, we will resolve all insufficiencies in the record against him.

¶ 28    With these principles in mind, we turn to the merits of the summary judgment order. Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005 (West 2020); *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. In determining whether the plaintiff is entitled to summary judgment, we must construe the pleadings and evidentiary material in the record in the light most favorable to the defendant and strictly against the plaintiff. *Schade v. Clausius*, 2016 IL App (1st) 143162, ¶ 17; *Happel v. Wal-Mart Stores, Inc.*, 199 Ill. 2d 179, 186 (2002).

¶ 29    A genuine issue of material fact exists where the facts are in dispute or where reasonable minds could draw different inferences from the undisputed facts. *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010); *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 114 (1995). However, "[m]ere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999).

¶ 30    The plaintiff bears the initial burden of proof and may meet it either "by affirmatively showing that some element of the case must be resolved in [its] favor or by establishing that there is an absence of evidence to support the [defendant's] case." (Internal quotation marks omitted.) *Epple v. LQ Management, LLC*, 2019 IL App (1st) 180853, ¶ 15. To survive its motion, however, the plaintiff need not prove its case, but must present a factual basis that would arguably entitle it to a judgment. *Bruns*, 2014 IL 116998, ¶ 12. Where the plaintiff introduces such facts, if not contradicted, the defendant may not rely on his pleadings alone to raise issues of material fact.

*Klitzka v. Hellios*, 348 Ill. App. 3d 594, 597 (2004) (citing *Hermes v. Fischer*, 226 Ill. App. 3d 820, 824 (1992)).

¶ 31    Our review of the circuit court's entry of summary judgment is *de novo*, and we may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis, or its reasoning was correct. See *Village of Palatine v. Palatine Associates, LLC*, 2012 IL App (1st) 102707, ¶ 43; see also *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). However, a circuit court's decision on a motion to reconsider an order will not be disturbed absent an abuse of discretion. *Woolums v. Huss*, 323 Ill. App. 3d 628, 639 (2001).

¶ 32    Because a guaranty is a contractual obligation, a breach of guaranty claim is governed by the same principles as a breach of contract claim. See *Riley Acquisitions, Inc. v. Drexler*, 408 Ill. App. 3d 397, 402-03 (2011). To recover for a breach of contract, the plaintiff must establish (1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by the defendant, and (4) resultant injury to the plaintiff. *Zirp-Burnham, LLC v. E. Terrell Associates, Inc.*, 356 Ill. App. 3d 590, 600 (2005).

¶ 33    In the present case, on appeal, the defendant contends that summary judgment was improper because the plaintiff failed to establish that it was the holder of the guaranty, *i.e.*, that there was a valid and enforceable contract between itself and the defendant. In addition, the defendant argues that even if the plaintiff is the holder of the guaranty, there remain genuine issues of material fact as to the scope of the defendant's liability under that contract.

¶ 34    In this respect, the defendant first points out, just as he did below, that it is undisputed that neither the October 1, 2010, note, nor the two allonges reference, let alone expressly assign, the May 1, 2008, guaranty to the plaintiff, so as to establish that the plaintiff is the owner of the

guaranty. Moreover, even if the plaintiff could somehow show that it is the holder of the guaranty, that contract nowhere guarantees the October 1, 2010, note. Rather, as the defendant points out, the guaranty defines the guaranteed "note," as

"the promissory note dated May 1, 2008, in the original principal amount of $200,000.00 from [Klaucens] to [FMB], together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note of agreement."

Because the October 1, 2010, note, upon which the plaintiff's entire complaint relies, does not provide that it is a renewal, extension, modification, refinancing, consolidation, or substitution for the May 1, 2008, note, the defendant contends that his guaranty is limited solely to the May 1, 2008, note. In the alternative, he asserts that, at the very least, viewing this evidence in the light most favorable to him, we must find that there remains a genuine issue of material fact as to the scope of his liability under the guaranty.

¶ 35    The plaintiff, on the other hand, responds that the defendant's arguments are irrelevant because the circuit court properly found that the plain language of the guaranty establishes that this is a "continuing" guaranty, which obligates the defendant to all future debts arising from the original May 1, 2008, note. In support, the plaintiff cites to the subsection of the guaranty that provides:

"THIS IS A 'CONTINUING GUARANTY' UNDER WHICH THE GUARANTOR AGREES TO GUARANTEE THE FULL AND PUNCTUAL PAYMENT, PERFORMANCE AND SATISFACTION OF THE GUARANTOR'S SHARE OF THE INDEBTEDNESS OF BORROWER TO LENDER, NOW EXISTING OR HEREAFTER ARISING OR ACQUIRED, ON A CONTINUING BASIS. ACCORDINGLY, ANY PAYMENTS MADE ON THE IDEBTEDNESS WILL NOT DISCHARGE OR

DIMINISH GUARANTOR'S OBLIGATIONS AND LIABILITY UNDER THE

GUARANTY FOR ANY REMAINING AND SUCCEEDING INDEBTEDNESS ***."

The plaintiff contends that this language clearly imposes upon the defendant the obligation for his

"share of" Klaucens' "indebtedness," both presently existing and "hereinafter arising or acquired,

on a continuing basis." The plaintiff argues that because the defendant admitted to having executed

the May 1, 2018, guaranty and did not deny that the October 1, 2010, note arose from the May 1,

2018, note, the plaintiff was entitled to summary judgment.

¶ 36    For the following reasons, we agree with the plaintiff and find that because the dispositive

issue in this appeal is whether the guaranty is a "continuing" one, the circuit court properly held

that summary judgment was proper in favor of the plaintiff.

¶ 37    A " 'continuing guaranty is a contract pursuant to which a person agrees to be a secondary

obligor for all future obligations of the principal obligor to the obligee.' " *TH Davidson & Co.,

Inc. v. Eidola Concrete, LLC*, 2012 IL App (3d) 110641, ¶ 11 (quoting Restatement (Third) of

Suretyship and Guaranty § 16 (1996)). Continuing guaranties of future obligations are valid,

binding, and have a long history in Illinois. See *Mamerow v. National Lead Co.*, 206 Ill. 626

(1903).

¶ 38    Because guaranties, like all other contracts, are construed according to general contract

principles, "[w]hether a guaranty is a continuing one will depend on the language of the contract,

interpreted according to the intention of the parties as manifested by their writings." 20 Ill. L. and

Prac. *Guaranty* § 15 (2022 Update); see *McLean County Bank v. Brokaw*, 119 Ill. 2d 405, 412

(1988); *Blackhawk Hotel Associates v. Kaufman*, 85 Ill. 2d 59, 64 (1981) (citing Restatement of

Security § 88 (1941)); Restatement (Third) of Suretyship and Guaranty § 14 (1996) ("[t]he

standards that apply to interpretation of contracts in general apply to interpretation of contracts

creating secondary obligations"). Where a guaranty's language is unequivocal in its terms, it must be interpreted as written. *Bank of Naperville v. Holz*, 86 Ill. App. 3d 533, 537 (1980). "Where by the terms of the written guaranty it appears that the parties look to a future course of dealing or a succession of credits it is generally considered a continuing guaranty." *Scovill Manufacturing Co. v. Cassidy*, 275 Ill. 462, 467 (1916); *Weger v. Robinson Nash Motor Co.*, 340 Ill. 81, 92 (1930); see *CCP Ltd. Partnership v. First Source Financial, Inc.*, 368 Ill. App. 3d 476, 483 (2006).

¶ 39    In the present case, a review of the guaranty contract unequivocally establishes that the parties contemplated a future course of dealing. As the plaintiff correctly points out, the guaranty, in all capital letters, contains a section under the heading "CONTINUING GUARANTY," which explicitly provides that the defendant (as the guarantor) will remain responsible for his share of Klaucens' indebtedness "now existing or *hereinafter arising or acquired*, *on a continuing basis*." (Emphasis added.) In addition, this provision states that any payments made on the indebtedness shall not discharge or diminish the defendant's obligations for any "remaining and *succeeding indebtedness*." (Emphasis added.)

¶ 40    What is more, the guaranty contract provides no limitation on the duration of the guaranty. Specifically, the contract states that unless the defendant provides FMB with a written notice of revocation, there is no limitation on the duration of the guaranty until all the indebtedness "incurred or contracted" has been paid off in full. Moreover, under the heading "Guarantor's Authorization to Lender," the defendant expressly authorizes FMB, "without notice or demand" and "without lessening" the defendant's liability under the guaranty, *inter alia*, from time to time to "make one or more additional secured or unsecured loans *** or otherwise to extend additional credit" to Klaucens.

¶ 41    Under this language, there can be no doubt that the parties contemplated a future course of

dealings and that the May 1, 2008, contract was for a continuing guaranty. See *e.g.*, *Harris Bank Argo v. Midpack Corp.*, 151 Ill. App. 3d 293, 295-296 (1986) (holding that a guarantor was liable on a promissory note, notwithstanding his claim that the guaranty applied to a previous note, because the guaranty stated that it was a continuing one which covered past, present, and future debts).

¶ 42    Accordingly, contrary to the defendant's position, the fact that the plaintiff failed to attach the May 1, 2008, promissory note to its complaint is irrelevant. The October 1, 2010, note is proof of Klaucens' indebtedness and an obligation "hereinafter arising" under the guaranty. The October 1, 2010, note is a future obligation between the original parties referenced in the guaranty, for which, under the continuing guaranty, the defendant is liable.

¶ 43    The defendant nonetheless asserts that the plaintiff should be prohibited from enforcing the guaranty because it was not a party to the guaranty contract but, rather, claims to be the holder of the guaranty by way of assignment. In this respect, the defendant again points out that there was no assignment of the guaranty because neither allonge mentions, let alone expressly assigns the guaranty to the plaintiff. For the following reasons, we disagree.

¶ 44    The defendant's argument is essentially one of standing, *i.e.*, that because the plaintiff does not own the guaranty, it lacks standing to enforce it. However, lack of standing is an affirmative defense that must be pleaded and proven by the defendant, rather than the plaintiff. *U.S. Bank National Ass'n v. Sauer*, 392 Ill. App. 3d 942, 946 (2009); *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004). The defendant here fails to meet his burden of pleading and proving this affirmative defense, as he fails to offer any evidence to show that the plaintiff is not the holder of the guaranty.

¶ 45    Nor could he. It is axiomatic that a debtor lacks standing to contest the transfer of the debt pursuant to an endorsement or assignment, unless the debtor himself is a party to the transfer

document. *Bank of America National Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 15. The defendant here was not a party to the transfer document and therefore has no standing to challenge the transfer of the guaranty to the plaintiff. Moreover, a review of the guaranty contract language reveals that the guaranty itself explicitly prohibits any defense to the guaranty's enforcement. Under the subsection "Guarantor's Waivers," the guaranty specifically provides, among other things, that the defendant waives "any and all rights or defenses *** including *** any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness."

¶ 46     Moreover, contrary to the defendant's position, no explicit assignment of the guaranty was necessary for the plaintiff to enforce the October 1, 2010, note. Instead, as the circuit court properly found, it was sufficient for the plaintiff to show that it was the holder of the note. In coming to this decision, and absent any precedent to the contrary, we find section 13 of the Restatement (Third) of Suretyship and Guaranty, to be instructive. Comment f to section 13 provides in pertinent part:

> "*Secondary obligation follows underlying obligation.* A secondary obligation, like a security interest, has value only as an adjunct to an underlying obligation. It can usually be assumed that a person assigning an underlying obligation intends to assign along with it any secondary obligation supporting it. Thus, unless there is agreement to the contrary or assignment is prohibited *** *assignment of the underlying obligation also assigns the secondary obligation.*" (Emphasis added.) Restatement (Third) of Suretyship and Guaranty § 13, *cmt. f* (1996).

¶ 47     Here, the guaranty contract provides no agreement prohibiting assignment. Rather, under the contract, the defendant explicitly authorizes FMB from time to time to "assign or transfer" the guaranty. In addition, the contract clearly states that the guaranty "shall be binding upon and inure

to the benefit of the parties, their successors and assigns." Under this record, we are compelled to conclude that when the October 1, 2010, note (*i.e.*, the underlying obligation) was assigned to the plaintiff, the guaranty (*i.e.*, the secondary obligation) was assigned as well. As such, we hold that summary judgment in favor of the plaintiff was proper.

¶ 48    For these same reasons, we reject the defendant's invitation to reverse the circuit court's order denying his motion to reconsider the grant of summary judgment in favor of the plaintiff. In doing so, we note that without a transcript of the proceedings from the hearing on this motion, we cannot know what arguments, aside from those in the pleadings, were made by the parties or what new evidence, if any, was brought to the attention of the circuit court. We also cannot know the reasons why the circuit court decided to deny the plaintiff's motion to reconsider. As such, we must presume that the court's decision was in in conformity with the law and had a sufficient legal and factual basis. *Foutch*, 99 Ill. 2d at 392.

¶ 49                                    III. CONCLUSION

¶ 50    For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 51    Affirmed.

_____

*Amos Financial, LLC v. Szydlowski*, 2022 IL App (1st) 210046

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2018-L-011035; the Hon. Jerry A. Esrig, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | Kevin S. Besetzny, of Besetzny Law P.C., of Chicago, for appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Noah Weininger, of Weininger Law Firm LLC, of Chicago, for appellee. |

_____